IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEASONS HOSPICE & PALLIATIVE CARE OF DELAWARE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the United States Department of Health & Human Services, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. 24-175-GBW-LDH <br><br> FILED <br><br> JUL 3 1 2025 <br><br> U.S. DISTRICT COURT DISTRICT OF DELAWARE |

**REPORT AND RECOMMENDATION**

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Seasons Hospice and Palliative Care of Delaware, LLC ("the Hospice") and Defendant Robert F. Kennedy, Jr. in his official capacity as Secretary of the United States Department of Health and Human Services ("the Secretary").[1] (D.I. 11, 13). The Hospice seeks judicial review of an administrative law judge's (ALJ) adverse decision denying Medicare reimbursement for hospice services provided to two beneficiaries. The Secretary seeks to affirm the ALJ's decision. For the following reasons, I recommend GRANTING the Hospice's motion in part, DENYING the Secretary's motion, and REMANDING this action for further proceedings. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1395ff(b)(1)(A).[2]

---

[1] The parties agree that Robert F. Kennedy, Jr., upon assuming the office of Secretary of the United States Department of Health & Human Services, was substituted as the defendant in place of former Secretary Xavier Becerra pursuant to Fed. R. Civ. P. 25(d). (D.I. 20; D.I. 21).

[2] *See Angelitos Health Care, Inc. v. Becerra*, C.A. No. 20-35, 2022 WL 981966, at *6 n.9 (S.D. Tex. Feb. 1, 2022), *report and recommendation adopted*, 2022 WL 980705 (S.D. Tex. Mar. 31, 2022), *aff'd*, No. 22-40298, 2023 WL 2941459 (5th Cir. Apr. 13, 2023) (stating § 405(g) is made applicable in Medicare overpayment cases by statute).

## I. BACKGROUND

### A. Statutory and Regulatory Framework

The Medicare Hospice Benefit authorizes Medicare[3] beneficiaries to receive coverage for hospice care. *United States v. Care Alternatives*, 81 F.4th 361, 366 (3d Cir. 2023) (citing Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 122, 96 Stat. 324, 356–63). Hospice care is palliative, aiming to "mak[e] [a terminally ill] individual as physically and emotionally comfortable as possible." *Id.* (quoting 42 C.F.R. § 418.3 (2021)). Indeed, a hospice-eligible individual who elects to receive the Hospice Benefit waives the right to Medicare payment for "curative" care that is designed to treat the individual's condition. *Id.* (citing 42 U.S.C. § 1395d(d)(2)(A)(ii)).

The Centers for Medicare and Medicaid Services ("CMS") administer the Hospice Benefit on behalf of the Secretary of the Department of Health and Human Services ("HHS"). *See* 42 U.S.C. § 1395 *et seq.* To be eligible for the Medicare Hospice Benefit, an individual must be certified as "terminally ill," 42 C.F.R. § 418.20, meaning that the individual's medical prognosis is that "life expectancy is 6 months or less if the illness runs its normal course." 42 C.F.R. § 418.3. That certification must be (1) be signed by at least one physician, and (2) be accompanied by "[c]linical information and other documentation that support the medical prognosis" of terminal illness in the medical record. 42 C.F.R. § 418.22(b). To satisfy the first component, the individual's attending physician and the medical director of the hospice program providing care must certify in writing that the individual is terminally ill at the time a patient is admitted to hospice. *See* 42 U.S.C. § 1395f(a)(7)(A)(i). To satisfy the second component, medical

---

[3] Medicare, a federally funded health insurance program for eligible aged and disabled persons, is established by Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (the "Medicare Act").

2

documentation, "[c]linical information and other documentation that support the medical prognosis must accompany the certification and must be filed in the [patient's] medical record with the written certification." 42 C.F.R. § 418.22(b)(2). As CMS has explained: "'A hospice needs to be certain that [a] physician's clinical judgment can be supported by clinical information and other documentation that provide a basis for the certification of 6 months or less if the illness runs its normal course. A signed certification, absent a medically sound basis that supports the clinical judgment, is not sufficient for application of the hospice benefit[.]'" *Care Alternatives*, 81 F.4th at 366 (quoting 70 Fed. Reg. 70,532, 70,534–35 (Nov. 22, 2005)). The Medicare Act prohibits payment for hospice services "which are not reasonable and necessary for the palliation or management of terminal illness." 42 U.S.C. § 1395y(a)(1)(C).

Medicare Hospice Benefit claims are processed by private Medicare Administrative Contractors ("MACs") who operate on behalf of CMS. MACs review, approve, and pay Medicare claims submitted by health care providers in accordance with the Medicare Act and agency guidelines. *See* 42 U.S.C. §§ 1395f(i), 1395kk, 1395h(a). A MAC may issue a Local Coverage Determination ("LCD") reflecting that contractor's determination of whether a particular service within the contractor's jurisdiction is covered. 42 U.S.C. § 1395ff(f)(2)(B). LCDs are guidelines that serve as "administrative and educational tools to assist providers in submitting correct claims for payment" as they "specify under what clinical circumstances an item or service is considered to be reasonable and necessary." Ctrs. for Medicare & Medicaid Servs., Dep't of Health & Hum. Servs., Pub. 100-08, Medicare Program Integrity, Transmittal 608, ch. 13.1.3 (Aug. 14, 2015).

Medicare Hospice Benefit claims are also subject to post-payment review, audits, and recoupment procedures. 42 U.S.C. § 1395ddd. A Supplemental Medical Review Contractor ("SMRC") can initiate a post-payment review to review an already-paid claim and determine

whether the provider received an overpayment or an underpayment. 42 C.F.R. § 405.980. During post-payment review, an SMRC verifies that the services provided were reasonable and medically necessary. *See* 42 U.S.C. §§ 1395ddd, 1395g(a), 1395y(a)(1)(C). If the SMRC concludes that an overpayment was made, then HHS can seek to recoup the amount of the overpayment. 42 U.S.C. § 1395ddd(f)(2).

If a claim is denied following post-payment review, a hospice provider can appeal through a four-part administrative appeal process consisting of: (1) requesting a redetermination of the decision by the Medicare contractor who issued the denial, 42 U.S.C. § 1395ff(a)(3), (c); (2) requesting reconsideration of the Medicare contractor's redetermination by a qualified independent contractor ("QIC"), 42 C.F.R. §§ 405.940, 405.960; (3) requesting a *de novo* hearing before an ALJ, 42 U.S.C. § 1395ff(d)(1); 42 C.F.R. § 405.1002; and (4) appealing any adverse ALJ decision to the HHS Departmental Appeals Board, Medicare Appeals Council (the "Council"), 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 405.1100. If the Council does not issue a decision within 180 days after receiving the request for review, a provider may seek judicial review of the ALJ's decision in a United States District Court. 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. §§ 405.1100, 405.1132, 405.1136.

### B. Factual Background[4]

The Hospice sought reimbursement from Medicare for hospice services provided to multiple beneficiaries between June 1, 2017, and June 30, 2020. CMS's relevant MAC, CGS Administrators, LLC, initially reimbursed the Hospice's claims in full. But the SMRC, Noridian Healthcare Solutions, LLC, conducted a post-payment review and determined that the Hospice

---

[4] The material facts in the parties' motions are confined to the Administrative Record and are undisputed. (D.I. 18; D.I. 11 at n.4). I cite to the Administrative Record in the format in which it was presented to the Court via USB.

was overpaid by $473,751.81 for various claims including those that the Hospice submitted for beneficiaries J.D. and G.P.

The Hospice appealed the SMRC's findings by seeking reconsideration with both the MAC and the QIC, C2C Innovative Solutions, Inc. The MAC upheld the SMRC's determination on the basis that the record did not contain sufficient clinical evidence to "support a trajectory of terminal decline" for J.D. and G.P. The QIC affirmed the MAC, again concluding that the record did not support a terminal prognosis of six months or less with respect to J.D. and G.P.

The Hospice next sought *de novo* review before an ALJ. At the June 27, 2022, hearing, the Hospice's medical expert Dr. Stephen Leedy, a board-certified hospice and palliative care physician, testified that J.D. and G.P. met the hospice eligibility requirements. But the ALJ disagreed and denied reimbursing the Hospice for services provided to J.D. and G.P. (D.I. 18, Vol. 1 at 53–55, 58–61, the "Decision").

The Hospice sought review of the Decision before the Council. The Council did not issue a decision within the requisite timeframe. The Hospice then sought leave from the Council to appeal the Decision in United States District Court, which the Council granted. The Hospice filed the instant Complaint seeking judicial review of the Decision. (D.I. 1).

## II. LEGAL STANDARD

### A. Summary Judgment

A party may move for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "An assertion that a fact cannot be—or,

alternatively, is—genuinely disputed must be supported either by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials,' or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Resop v. Deallie*, No. 15-626-LPS, 2017 WL 3586863, at *2 (D. Del. Aug. 18, 2017) (quoting Fed. R. Civ. P. 56(c)(1)(A), (B)). A factual dispute is only genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### B. Judicial Review of Medicare Appeals

Where the Council does not review an ALJ's decision, as here, the ALJ's decision stands as the final decision of the Secretary. *Hospice of E. Texas v. Sec'y of United States Dep't of Health & Hum. Servs.*, C.A. No. 23-136-RWS-JBB, 2025 WL 1062504, at *7 (E.D. Tex. Feb. 21, 2025), *report and recommendation adopted sub nom. Hospice of E. Texas v. Sec'y, United States Dep't of Health & Hum. Servs.*, C.A. No. 23-136-RWS-JBB, 2025 WL 957519 (E.D. Tex. Mar. 31, 2025) (citing *Prime Healthcare Servs.-Montclair, L.L.C. v. Hargan*, C.A. No. 17-659 PA (JCX), 2018 WL 333862, at *5 (C.D. Cal. Jan. 9, 2018)). Such final decisions are judicially reviewed pursuant to 42 U.S.C. § 405(g), incorporated into the Medicare Act by 42 U.S.C. § 1395ff(b)(1)(A).

Under 42 U.S.C. § 405(g), an ALJ's factual findings must be upheld "if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Benyhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## III. DISCUSSION

The Hospice argues that the Decision was not based on substantial evidence because, among other issues, the ALJ did not adequately explain her reasoning. (D.I. 14 at 17–19, 25). I agree.

The Decision begins by quoting from the QIC's reconsideration decision opposing a benefit award. (D.I. 18, Vol. 1 at 53–55, 58–61). The quoted portions of the QIC's reconsideration decision do not expressly address the relevant LCD, but the Secretary maintains that the reconsideration decision identifies the predictive clinical variables from the LCD that were not present for each beneficiary. (D.I. 12 at 15–16). The Decision then identifies portions of the medical record probative of each beneficiary's prognosis, paraphrases clinical information presented by Dr. Leedy supporting a terminal diagnosis, and summarizes arguments offered by the Hospice's counsel at the ALJ hearing. (D.I. 18, Vol. 1 at 53–55, 58–61). In what appear to be the only explanatory paragraphs, the ALJ seems to implicitly reject Dr. Leedy's expert medical opinion in favor of the QIC's reconsideration decision and summarily concludes that J.D. and G.P. were not terminally ill. Indeed, the Decision's analysis for J.D. states, in its totality:

> The record does not include clinical support for the Beneficiary's terminal status, nor a brief narrative that supports a determination of terminal illness. The clinical factors documented (weight loss and other measurements of decline) failed to meet the standard set by the LCD. The hospice services provided to the Beneficiary were not medically reasonable and necessary and are not covered by Medicare.

(*Id.* at 55). Similarly, the analysis for G.P. states:

> The record does not include clinical support for the Beneficiary's terminal status. The clinical factors documented (weight loss and other measurements of decline) failed to meet the standard set by the LCD. The hospice services provided to the Beneficiary were not medically reasonable and necessary and are not covered by Medicare.

(*Id.* at 61). Thus, with respect to beneficiaries J.D. and G.P., the ALJ included no explanation as to *why* she rejected the lone expert's opinion, or *why* the medical records detailing the patients' decline were insufficient in light of the LCDs.

The ALJ's Decision is insufficient for two reasons. First, the lack of any reasoned discussion impairs my judicial review, particularly when the Decision does not explain why Dr. Leedy's medical opinions were rejected in favor of the QIC's reconsideration decision. *See Hospice of E. Texas*, 2025 WL 957519, at *6 ("[T]the ALJ's failure to substantively address any of [the medical expert's] beneficiary-specific opinions, which relate specifically to the question of the reasonableness and necessity of the beneficiaries' hospice care, was improper."); *Cumerland* [sic] *Cnty. Hosp. Sys., Inc. v. Price*, C.A. No. 15-317-D, 2017 WL 1047255, at *10 (E.D.N.C. Feb. 23, 2017), *report and recommendation adopted sub nom. Cumberland Cnty. Hosp. Sys., Inc. v. Price*, C.A. No. 15-317-D, 2017 WL 1049474 (E.D.N.C. Mar. 17, 2017) ("The lack of any discussion . . . of [the testifying expert's] opinions leaves the court to speculate as to precisely how it treated them and why, and precludes the court from meaningfully determining whether substantial evidence supports the . . . decision.").

The Secretary argues that the Decision is nevertheless sound because the ALJ must have implicitly considered and rejected certain evidence. For example, the Secretary maintains that the ALJ implicitly considered Dr. Leedy's opinions because she "repeatedly cited Dr. Leedy's testimony throughout her Decision." (D.I. 12 at 22 n.4). A citation to Dr. Leedy's opinions is not

8

a discussion of them; the ALJ's citations are not accompanied by any explanation as to why she rejected them in favor of the QIC's analyses. *See Hospice of E. Texas*, 2025 WL 957519, at *6 (finding ALJ's explanation insufficient where ALJ "just repeated the same denial from the reviewers that there was insufficient clinical information to support comorbidities that affected each beneficiary's prognosis."). Absent discussion or analysis, I cannot find that the ALJ's decision is supported by substantial evidence.

The Secretary similarly maintains that because the ALJ listed certain clinical factors that supported a terminal diagnosis, it was within her purview "to weigh the evidence in the medical record against the guidance set forth in the LCD and reach a reasoned conclusion." (D.I. 12 at 17). But, again, no predicate analysis exists enabling me to find her conclusions to be "reasoned."[5] And while the Secretary argues it was sufficient for the "ALJ [to] directly incorporate[] the reasoning of the QIC panel of clinical experts for denying coverage for claims pertaining to Beneficiaries J.D. and G.P. in the Decision," (D.I. 12 at 12),[6] such explanation-less adherence to the QIC's reconsideration decision calls into question whether the ALJ conducted a *de novo* review as required by 42 C.F.R. § 405.1000(d).

---

[5] The Secretary submits as supplemental authority *Capital Hospice v. Kennedy*, where the court concluded that an ALJ's decision as to hospice eligibility was supported by substantial evidence. *See* D.I. 21 (citing *Capital Hospice v. Kennedy*, C.A. No. 23-1741 (RDA/LRV), 2025 WL 961672, at *9 (E.D. Va. Mar. 31, 2025). But there, the court affirmed the ALJ's "comprehensive decision" where the ALJ "set out the applicable law and policy, his general findings of fact and analysis, his findings of fact and analysis for each individual patient, and his conclusions of law as to each patient." *Capital Hospice*, 2025 WL 961672, at *8. The court found that "[i]n reviewing the evidence before him, the ALJ considered each patient individually and . . . engaged in a thorough analysis." *Id.* There is no such analysis here.

[6] *See also* D.I. 12 at 15 ("As the ALJ concluded, and for the reasons found by the QIC's expert medical review . . ."); *Id.* ("The ALJ incorporated the findings of the QIC decision . . .").

9

Second, the lack of reasoning requires me to conclude that the ALJ substituted her own lay assessment of the medical records to determine that J.D. and G.P. were not eligible for hospice. An ALJ may not "exercise absolute discretion to credit and discredit an expert's medical evidence," or to "set his own expertise against that of a physician who presents competent evidence." *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). The Secretary insists that the ALJ did not "play doctor" because she made no independent medical findings resting on her own lay judgments and assumptions. (D.I. 15 at 6–7). But as the Hospice notes in *Cumberland County Hospital* (which the Secretary declines to address), the court there recognized that a failure to address the treating physician's opinion relating to the reasonableness and necessity of the patient's care suggests that an ALJ may have improperly made a medical judgment, concluding: "it is not for the [decision-maker] to insert its own medical conclusions into a case in place of those of the beneficiary's physicians." *Cumerland* [sic] *Cnty. Hosp. Sys.*, 2017 WL 1047255, at *10.

Because the Decision lacks explanation, I cannot conclude that it was based on substantial evidence. Although the Hospice seeks an order "reversing the claim denials" such that "the Hospice be paid for the services it provided to the hospice patients at issue," (D.I. 13 at 1), I instead recommend remanding this action to the ALJ consistent with this Report and Recommendation. Because I recommend remanding this action, I do not address other grounds for summary judgment raised by the Hospice and the Secretary's motions.

## IV. CONCLUSION

For the foregoing reasons, I recommend granting the Hospice's motion in part, denying the Secretary's motion, and remanding this action for further proceedings.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: July 31, 2025

_____
Laura D. Hatcher
United States Magistrate Judge